1
2
3
4

**UNITED STATES DISTRICT COURT**

5

**EASTERN DISTRICT OF CALIFORNIA**

6
7
8
9
10
11
12

| RAFAEL LOPEZ, | ) | Case No.: 1:19-cv-00971-BAM |
|---|---|---|
| Plaintiff, | ) | **ORDER REGARDING PLAINTIFF'S** |
| v. | ) | **SOCIAL SECURITY COMPLAINT** |
| ANDREW M. SAUL, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

13
14

**INTRODUCTION**

15       Plaintiff Rafael Lopez ("Plaintiff") seeks judicial review of a final decision of the

16   Commissioner of Social Security ("Commissioner") denying his application for disability insurance

17   benefits ("DBI") under Title II of the Social Security Act and for supplemental security income

18   ("SSI") under Title XVI of the Social Security Act. The matter is currently before the Court on the

19   parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A.

20   McAuliffe.[1]

21       Having considered the briefing and record in this matter, the Court finds the decision of the

22   Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole

23   and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to

24   deny benefits.

25

**FACTS AND PRIOR PROCEEDINGS**

26
27

---

28

[1]       The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. Nos. 6, 8, 21.)

Plaintiff protectively filed applications for a period of disability and DBI and for SSI on January 15, 2016. AR 15, 173-186.[2] In both applications, Plaintiff alleged disability beginning November 5, 2010. AR 173, 177. Plaintiff's applications were denied initially and on reconsideration and Plaintiff subsequently requested a hearing before an ALJ. AR 100-113, 116-132. ALJ Matilda Surh held a hearing on May 22, 2018, and issued an order denying benefits on August 31, 2018. AR 12-47. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-11, 170-172. This appeal followed.

**Relevant Hearing Testimony**

The ALJ held a hearing on May 22, 2018, in Fresno, California. Plaintiff appeared in person with his attorney, Robert Ishikawa. Impartial Vocational Expert ("VE") Cheryl Chandler also appeared. AR 29.

In response to questioning by the ALJ, Plaintiff testified that he was born on November 26, 1980, and he graduated high school but did not obtain any vocational certificates. Plaintiff does not work and pays his bills with his parents' assistance. Plaintiff lives with his four children aged 16, 15, 14, and 10 in a ground floor condo. Plaintiff previously worked for Metco as a vendor filling soda and snack machines and loading and unloading a truck. The heaviest weight he had to lift and carry was 200 pounds using a dolly going upstairs. AR 32-33.

When asked why he felt he was unable to work, Plaintiff testified that he experiences pain in his lower back and in both legs. Plaintiff sustained an injury at work in 2010 and continued to work on and off on light duty until his surgery in 2012. Plaintiff's surgery did not improve his condition. Since his surgery in 2012, Plaintiff has received injections and has burned nerves in his back. The injections were helpful for two-to-three days at most. Plaintiff also underwent a radio frequency oblation over two years ago that did not help. AR 33-34.

In response to questioning regarding his daily activities, Plaintiff testified that he wakes in the morning, drives his children to school, returns home and takes his medications, then lies down for the day until its time to pick up his children. Plaintiff then picks up his children, returns home, and takes

---

[2]        References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

his medication again. He prepares quick meals in the microwave for himself. Plaintiff is lying down most of the time that he is at home. His medication makes him drowsy and he sometimes sleeps. Plaintiff's children do the laundry and his mother comes over to make dinner for the children almost every night. When his mother does not come over, the children microwave their own meals. Plaintiff's children do all of the cleaning. He is able to bathe and get dressed without assistance and can drive himself. Plaintiff can walk for ten minutes at a time before he must sit down and rest for fifteen minutes. He can sit for fifteen minutes at a time before he must stand. Plaintiff's parents do the grocery shopping. Plaintiff lies on the couch or in a recliner when his children return from school and if they ask questions about homework he helps them while lying down. During the weekends, if his children want to go places he will drop them off and return home. Plaintiff does not exercise. AR 34-37.

Plaintiff further testified that his doctors have recommended another surgery to remove the hardware currently in place and put new hardware in because Plaintiff's first surgery did not work and the hardware is moving a little. Plaintiff experiences pain in both legs, although predominantly in his right leg, and the pain comes and goes. He has good days and bad days and on his bad days he is unable to get out of bed all day and he calls his mother to take his kids to and from school. During his bad days, he takes medication to treat his pain. Plaintiff estimates that he can lift and carry no more than ten pounds. AR 37-38.

In response to questioning by his attorney, Plaintiff testified that he underwent radio frequency oblation in September of 2015 and the medication he takes is Norco. Plaintiff experiences drowsiness as a side effect from his medication. He has difficulty sleeping at night because the pain wakes him. Plaintiff waits to take his medication until after he has driven his kids to school. By the time he picks his kids up in the afternoon, the side effects of the Norco have worn off and Plaintiff waits to take his medication again until after he picks them up. Plaintiff's pain affects his ability to focus or concentrate because he is uncomfortable, has difficulty staying still, and it's hard for him to concentrate on just one thing. Plaintiff watches a little television but cannot watch a half hour show because he has to get up and move around. If he was asked what happened during the show, he could recall a piece of it but not the whole thing. AR 38-40.

Plaintiff testified that he can put his socks on, although it is very painful, and he wears sandals most of the time so that he does not have to put shoes on and tie them. If he does wear shoes, his youngest son ties them for him because it is painful to bend over. Plaintiff can put his pants on. The longest he can drive is ten minutes to take his kids to school and ten minutes back. He can walk for ten minutes at a time approximately four times in a day, and after the fourth time he experiences too much pain in his back and needs to lie down. He can also stand for ten minutes at a time approximately four times per day and can sit for fifteen minutes at a time approximately four times per day. The remainder of his time is spent lying down. AR 40-41.

Plaintiff had a CAT scan in December of 2017. His doctor told him the fusion never fused correctly and one of the screws is moving or coming out of place. His doctor recommended that he see a surgeon, but he is waiting for his insurance to schedule a visit with a surgeon. Plaintiff's doctor found evidence of a loose screw and Plaintiff thinks that every time the screw moves he gets sharp pain in his back. Plaintiff's pain in his right leg extends all the way down to his toes and the pain in his back is in the middle of his lower back. His back pain is constant. Plaintiff underwent physical therapy both before and after his surgery and it made his pain worse, so his doctor recommended that he stop. He has tried using heat and cold to help relieve his pain, but it did not work. Stretching also does not help. Plaintiff sees his doctor every six weeks and has been seeing him for three to four years. His doctor does not recommend that he go through a second surgery because typically if the first one does not work than the second will not work. Plaintiff's doctor says that the fusion is not fused and there is a screw coming loose. Plaintiff does not have a yard in his condo and does not do any yard work. AR 41-44.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE, Cheryl Chandler. The VE classified Plaintiff's past work as a coin collector ranging from medium to heavy. The ALJ also asked the VE hypothetical questions assuming an individual with the same age, education, and work experience as Plaintiff for all hypotheticals. AR 45.

For the first hypothetical, the ALJ asked the VE to assume an individual that can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk for six out of eight hours in a workday, has no limits on sitting, can frequently climb ramps or stairs, can occasionally use ladders,

ropes, or scaffolds, and can occasionally stoop, kneel, crouch, or crawl. The VE testified that Plaintiff's past work would not be available, but all unskilled, light or sedentary work would be available. AR 45-46.

For the second hypothetical, the ALJ added the additional limitation that this individual would need to be able to sit and/or stand in thirty-minute increments. The VE testified there would be work available as a cashier, storage facility rental clerk, or courier but at reduced numbers due to the restriction on sitting and standing. AR 46.

For the third hypothetical, the ALJ added the additional limitation that this individual would be off task fifteen percent of the workday due to pain and side effects from medications. The VE testified there would be no work available. AR 46.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to the Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 12-28. Specifically, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2016 and had not engaged in substantial gainful activity since November 5, 2010, the alleged onset date. AR 17. Further, the ALJ identified degenerative disc disease of the lumbar spine with radiculopathy status post-surgery as a severe impairment. AR 17-18. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 18. Based on a review of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry ten pounds frequently and twenty pounds occasionally, stand and walk for six hours in an eight-hour workday, sit without limitations, frequently climb ramps and stairs, occasionally stoop, kneel, crouch, crawl, and limb ladders, ropes, and scaffolds, and must be permitted to alternate between sitting and standing every thirty minutes. AR 18-22. The ALJ determined that Plaintiff was unable to perform any past relevant work, was defined as a younger individual on the alleged disability onset date, had at least a

5

high school education and was able to communicate in English, and transferability of job skills was not an issue. AR 22. With Plaintiff's RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 23, The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from November 5, 2010, through the date of the decision. AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *See, e.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The

1   burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir.

2   1990).

3   **DISCUSSION**[3]

4       Plaintiff raises the following challenges to the ALJ's decision: (1) the ALJ erred by failing to

5   give controlling weight to the opinion of treating physician John F. Kirby, M.D.; and (2) the ALJ

6   failed to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony.

7   (Doc. No. 18 at 9-24.)

8       **A.  The ALJ did not err in evaluating Dr. Kirby's opinion.**

9       According to Plaintiff, the ALJ erred in giving little weight to Dr. Kirby's opinion submitted in

10  support of Plaintiff's disability claim. (Doc. No. 18 at 9-17.) Specifically, Plaintiff contends that the

11  ALJ "erroneously lumped together" Dr. Kirby's opinion with other medical opinions and further

12  mischaracterized and "cherry picked" evidence in her analysis. (*Id.*) Plaintiff also asserts that the ALJ

13  impermissibly "played doctor" and substituted her lay knowledge for the medical opinions. (*Id.*) The

14  Court disagrees.

15      In assessing a claimant's RFC, the ALJ may consider any statements provided by acceptable

16  medical sources. *See* 20 C.F.R. §§ 404.1527, 416.927.[4] Cases in this circuit identify three types of

17  physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not

18  treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant

19  (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As a general rule, more

20  weight should be given to the opinion of a treating source than to the opinions of doctors who do not

21  treat the claimant. *Id.* Where a treating physician's opinion is not contradicted by another doctor, it

22  may be rejected only for "clear and convincing" reasons. *Id.* If the treating physician's opinion is

---

[3]     The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

[4]     For all claims filed on or after March 27, 2017, 20 C.F.R. new regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c, 416.920c. The claim here, however, was filed before March 27, 2017. Thus, the Court analyzes Plaintiff's claim pursuant to the treating source rule set forth in sections 404.1527 and 416.927.

1   contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons

2   supported by substantial evidence in the record to reject this opinion. *Id.*

3       Dr. Kirby completed and signed a form Residual Function Capacity Medical Source Statement

4   on February 28, 2018. AR 1457-1460. According to Dr. Kirby's form statement, he had been seeing

5   Plaintiff every six weeks since October 26, 2014. AR 1457. He diagnosed Plaintiff with failed back

6   and constant back pain with radicular leg pain. AR 1457. Dr. Kirby stated that Plaintiff's prognosis is

7   permanent, and his most significant clinical findings and objective signs were bilateral positive

8   straight leg raising. AR 1457. Dr. Kirby indicated that Plaintiff's impairments, symptoms, and

9   limitations have lasted since November 5, 2010, the date Plaintiff claims he could no longer work. AR

10  1457.

11      In response to form questions, Dr. Kirby checked boxes stating that Plaintiff can frequently lift

12  and carry less than five pounds, occasionally lift and carry five pounds, and never lift or carry ten

13  pounds or more. AR 1457-1458. Dr. Kirby indicated that Plaintiff cannot walk one city block or more

14  without rest or severe pain, cannot walk one block or more on rough or uneven ground, cannot climb

15  steps without use of a handrail at a reasonable pace, does not have problems with balance when

16  ambulating, and does have problems with stooping, crouching, and bending. AR 1458. Additionally,

17  Plaintiff must lie down or recline for ten minutes at a time before needing to sit up, stand up, or walk

18  around. AR 1458. Plaintiff must lie down or recline during the day due to fatigue and pain for

19  approximately one hour during an eight-hour workday. AR 1458. Dr. Kirby further opined that

20  Plaintiff can sit for about two hours and can stand and walk for about two hours in an eight-hour

21  workday. AR 1458. Plaintiff would require unscheduled breaks away from the work area one-to-two

22  times per day for ten minutes at a time and would need to lie down/sit quietly during breaks. AR 1458-

23  1459. Plaintiff would not require an assistive device when standing and walking and does not have

24  significant limitations with reaching, handling, or fingering. AR 1459. Additionally, Dr. Kirby opined

25  that Plaintiff can push and pull arm or leg controls from a sitting position for six or more hours but

26  does not have the ability to climb stairs, ladders, scaffolds, ropes, or ramps. AR 1459.

27      Dr. Kirby did not identify any psychological conditions or emotional factors that affect

28  Plaintiff's physical condition and/or contribute to the severity of his symptoms. AR 1459. However,

he indicated that Plaintiff's pain is occasionally severe enough to interfere with attention and

concentration needed to perform simple work tasks. AR 1459. Based on Plaintiff's limitations taken in

combination, Dr. Kirby estimated that Plaintiff would be off task, meaning he would be unable to

perform work and/or away from the work environment, twenty percent of an eight-hour workday. AR

1460. Dr. Kirby further estimated that Plaintiff would likely be absent from work two days per month

and unable to complete an eight-hour workday for five days or more per month as a result of his

impairments and/or his need for medical treatment and care. AR 1460. Dr. Kirby further checked the

box indicating that he believed, within a reasonable degree of medical certainty, that Plaintiff is unable

to obtain and retain work in a competitive work environment, eight hours per day, five days per week,

for a continuous period of six months or more due to his impairments and limitations. AR 1460.

>      With respect to Dr. Kirby's opinion, the ALJ reasoned as follows:

>      "John F. Kirby, M.D., a treating physician, stated that the claimant was limited to less
>      than sedentary exertion, would need unscheduled breaks during a normal workday, could
>      only occasionally perform simple tasks due to pain, would be off task 20% of the time
>      during a normal workday, would be absent from work 2 days per month, would be unable
>      to complete a normal workday at least 5 times per month, could sustain efficient
>      productivity 50% of the time or less, and was unable to climb ramps, stairs, ladders,
>      ropes, or scaffolds (Exhibit 11F).

>                                              . . .

>      These opinions understate the claimant's physical capacity and are given little weight
>      because they are contradicted by the adequate physical functioning that the claimant
>      exhibited during the orthopedic consultative examination conducted on June 5, 2016
>      (Exhibit 6F). The opinions are also contradicted by the diagnostic images taken after the
>      lumbar spine surgery, as explained above (Exhibits 1F/4, 1F/97, 1F/100, 2F/2, 2F/54,
>      2F/57, 2F/59, 4F/7, 7F/471, 8F, AND 13F/3). In addition, the opinions are contradicted
>      by electrodiagnostic studies done after the lumbar spine surgery, as explained above
>      (Exhibits 1F/4 and 1F 126-127). Moreover, the opinions are inconsistent with the
>      effectiveness of the claimant's pain medication (Exhibit 5F/6). Furthermore, the claimant
>      does not require any assistive device for ambulation (Exhibit 14F/169). Finally, the
>      opinions are inconsistent with the claimant's admitted activities of daily living and work
>      activity after the alleged disability onset date (Exhibits 8D, 4E, 6F, 12F/1, and hearing
>      testimony)."

AR 21-22.

>      Dr. Kirby's opinion was contradicted by State agency physicians A. Khong, M.D. and G.

Spellman, M.D., as well as consultative examiner Dale H. Van Kirk, M.D., examining physician

Marshall S. Lewis, M.D., and treating physicians Patrick O'Brien, M.D. and Tony C. Fernandez,

1    M.D., all of whom opined that Plaintiff's limitations were less severe than those opined by Dr. Kirby.

2    AR 48-99, 266, 555-561, 820, 1432-1444. As a result, the ALJ was required to provide specific and

3    legitimate reasons supported by substantial evidence in the record to discount this opinion.

4         As an initial matter, Plaintiff argues that the ALJ erroneously "lumped together" various

5    workers' compensation-generated statements with Dr. Kirby's opinion "and rejected them in one fell

6    swoop, using the same boilerplate, conclusory language for all[.]" (Doc. No. 18 at 12-13.) According

7    to Plaintiff, the ALJ's analysis lacked the requisite specificity for discounting a treating physicians'

8    opinion. (*Id.* at 13.) However, Plaintiff does not cite any authority for the proposition that the ALJ errs

9    in evaluating the opinion evidence by summarizing each opinion and identifying the reasons for

10   discounting those opinions all together.

11        An ALJ may meet the burden of identifying specific and legitimate reasons for discounting a

12   medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical

13   evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.2d 747,

14   751 (9th Cir.1989) (*quoting Cotton v. Bowen,* 799 F.2d 1403, 1408 (9th Cir.1986)) (*superseded by*

15   *statute on other grounds* ). When rejecting a medical opinion, the adjudicator is not required to

16   recite specific words. *Magallanes*, 881 F.2d at 755 (reasoning that an incantation of magic words to

17   reject physician's opinion is not required). The Ninth Circuit has held that a reviewing court can

18   properly read the adjudicator's summary of the evidence and findings and draw specific and legitimate

19   inferences therefrom. *Id.* ("As a reviewing court, we are not deprived of our faculties for drawing

20   specific and legitimate inferences from the ALJ's opinion.") That standard was met here. The Court is

21   able to adequately determine the basis for the ALJ's decision and finds that the particular format that

22   the ALJ utilized when discounting Dr. Kirby's opinion does not constitute reversible error.

23        Likewise, the ALJ's bases for discounting Dr. Kirby's opinion were not conclusory and

24   boilerplate as Plaintiff contends. "An ALJ errs when he rejects a medical opinion or assigns it little

25   weight while doing nothing more than ignoring it, asserting without explanation that

26   another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer

27   a substantive basis for his conclusion." *Garrison v. Colvin,* 759 F.3d 995, 1013 (9th Cir. 2014). Here,

28   in contrast, the ALJ set out a detailed and thorough summary of Dr. Kirby's opinion and the

1    conflicting clinical evidence, stated her interpretation thereof, and made findings. She did more than

2    merely offer her conclusions or set forth boilerplate language. She identified her interpretations of the

3    evidence and explained why they were correct. *See Embrey v. Bowen,* 849 F.2d 418, 421–22 (9th Cir.

4    1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations

5    and explain why they, rather than the doctors', are correct.").

6           In this instance, the ALJ first discounted Dr. Kirby's opinion because the findings were

7    inconsistent with the medical record. AR 21-22. An ALJ may discount a treating or examining

8    physician's opinion when it is inconsistent with or unsupported by the medical evidence. *See*

9    *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that the ALJ properly rejected the

10   opinion of a treating physician since it was not supported by treatment notes or objective medical

11   findings); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (concluding

12   that a contradiction between treating physician's opinion and his treatment notes constitutes a specific

13   and legitimate reason for rejecting treating physician's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035,

14   1041 (9th Cir. 2008) (reasoning that "incongruity" between a doctor's questionnaire responses and her

15   medical records provided specific and legitimate reason for rejecting doctor's opinion); *Batson v.*

16   *Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (noting that "an ALJ may discredit

17   treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, ...

18   or by objective medical findings"). Accordingly, this was a specific and legitimate reason for

19   discounting Dr. Kirby's opinion.

20          Plaintiff argues that, in finding that Dr. Kirby's opinion was inconsistent with the medical

21   record, the ALJ mischaracterized and cherry-picked evidence. (Doc. No. 18 at 15.) Specifically,

22   Plaintiff argues that "many" of the reports the ALJ cited were dated prior to Plaintiff's lumbar spine

23   surgery even though the ALJ's reasoning described these reports as being dated after the surgery. (*Id.*

24   at 15.) While Plaintiff is correct that a few of the medical records cited were dated prior to Plaintiff's

25   surgery, the majority of the ALJ's citations were to evidence in the record dated after the surgery. *See*

26   AR 21-22, 405, 457, 460, 462, 480, 555-561, 1431, 1512. Here, the ALJ properly considered whether

27   Dr. Kirby's opinion was consistent with the record as a whole, including records that both predated

28   and postdated Plaintiff's surgery. *See Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating

1    physicians' opinions that are . . . unsupported by the record *as a* whole[.]"); 20 C.F.R. §§

2    4041.527(c)(4), 416.927 (c)(4) ("Generally, the more consistent a medical opinion is with the record

3    as a whole, the more weight we will give to that medical opinion."). Moreover, Plaintiff does not

4    establish how the ALJ's citation to records both before and after Plaintiff's surgery is harmful error

5    such that it invalidates the ALJ's entire opinion. *See, e.g.*, *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533

6    F.3d 1155, 1162 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's

7    conclusions ...' and the error 'does not negate the validity of the ALJ's ultimate ... conclusion,' such is

8    deemed harmless and does not warrant reversal.") (quoting *Batson*, 359 F.3d at 1197).

9        Plaintiff's additional argument that the ALJ "play[ed] doctor" by interpreting the medical

10   evidence and concluding that it contradicted Dr. Kirby's opinion is likewise without merit.[5] (Doc. No.

11   18 at 13.) Contrary to Plaintiff's contention, it is within the ALJ's province to synthesize the medical

12   evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007) (Beezer, C.J., dissenting)

13   ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion

14   to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine

15   which reports to credit and which to reject."); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595,

16   603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal

17   inconsistencies" within doctor's reports); *Tommasetti*, 533 F.3d at 1041-1042 ("[T]he ALJ is the final

18   arbiter with respect to resolving ambiguities in the medical evidence."). Therefore, it was appropriate

19   for the ALJ to weigh the relevant evidence in determining that Dr. Kirby's opinion was inconsistent

20   with the medical record.

21

22

---

23   [5] In support of this argument, Plaintiff cites to what appears to be certain internet articles that are not part of the administrative record. The submission of new evidence to the trial court is governed by 42 U.S.C. § 405(g) which requires

24   the claimant to show that the new evidence is material and there was good cause for the failure to incorporate the evidence into the record in the prior proceeding. *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984). "To be material under section 405(g), the new evidence must bear 'directly and substantially on the matter in dispute." *Mayes v.*

25   *Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). Further, new evidence requires remand "only where there is a reasonable possibility that the new evidence would have changed the

26   outcome of the Secretary's determination had it been before him." *Booz*, 734 F.2d at 1380 (quoting *Dorsey v. Heckler*, 702 F.2d 597, 604–605 (5th Cir. 1983)). Good cause is established where the material was unavailable earlier. *Mayes*, 276 F.3d

27   at 463. Plaintiff has not made the requisite showing that the articles cited are material and there was good cause for the failure to incorporate this evidence into the record. Accordingly, the articles have not been considered here.

28

1    In arguing that the ALJ "play[ed] doctor," Plaintiff essentially sets forth his view of the

2  medical evidence and asserts that this interpretation, rather than the ALJ's, is correct. However, the

3  Court's scope of review of decisions granting or denying Social Security disability is limited. *Hall v.*

4  *Sec'y of Health, Educ. & Welfare,* 602 F.2d 1372, 1374 (9th Cir.1979) (observing that Congress has

5  mandated a very limited scope of judicial review of the Commissioner's decisions granting or

6  denying Social Security disability benefits). The Court must consider the record as a whole,

7  considering both the evidence that supports and the evidence that detracts from the Commissioner's

8  decision; it is not the court's role to re-weigh the evidence or substitute its own judgment. *Winans v.*

9  *Bowen,* 853 F.2d 643, 644–45 (9th Cir.1987). If there is conflicting evidence supporting a finding of

10  either disability or nondisability, the ALJ may resolve the conflict so long as there is "more than one

11  rational interpretation of the evidence." *Sprague,* 812 F.2d at 1230. Where evidence may support more

12  than one rational interpretation, "the Court may not substitute its judgment for that of the

13  Commissioner." *Tackett v. Apfel,* 180 F.3d 1094, 1097 (9th Cir. 1999); s*ee also Matney on Behalf of*

14  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir.1992) ("The trier of fact and not the reviewing court

15  must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may

16  not substitute its judgment for that of the ALJ.").

17    A review of the record reveals that there is substantial evidence supporting the ALJ's finding

18  that the relevant medical evidence is inconsistent with the severity of the limitations set forth in Dr.

19  Kirby's opinion. *See also Richardson*, 402 U.S. at 401 (substantial evidence is "such relevant evidence

20  as a reasonable mind might accept as adequate to support a conclusion."). While treatment records

21  reflect some limitations, they do not contain any findings substantiating Dr Kirby's opinion that, as of

22  February 28, 2018, Plaintiff was limited to less than sedentary exertion, would need unscheduled

23  breaks during a normal workday, could only occasionally perform simple tasks due to pain, would be

24  off task twenty percent of the time during a normal workday, would be absent from work two days per

25  month, would be unable to complete a normal workday at least five times per month, could sustain

26  efficient productivity fifty percent of the time or less, and was unable to climb ramps, stairs, ladders,

27  ropes, or scaffolds. AR 1457-1460. Additionally, there is little indication in the record or in Dr.

28  Kirby's report itself as to what the bases for these restrictions might be.

Although Plaintiff may disagree with the ALJ's assessment of the evidence, the ALJ in this case properly discharged her responsibilities of determining credibility and resolving any conflicts or ambiguities in the evidence. Her interpretation of the evidence is rational therefore must be upheld. *See Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.") (citation omitted); *Morgan,* 169 F.3d at 600 ("Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.") (citation omitted). Plaintiff also fails to explain how his interpretation of the evidence he cites in his brief supports the degree of limitations opined by Dr. Kirby even though the burden is on the claimant to establish disability. *Terry,* 903 F.2d at 1275; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). Considering the record as a whole and weighing both the evidence and supports and detracts from the ALJ's conclusion, the Court considers the ALJ's finding that Dr. Kirby's opinion is inconsistent with the medical record to be supported by substantial evidence.

The ALJ further discounted Dr. Kirby's opinion because it was inconsistent with the effectiveness of Plaintiff's pain medication. AR 22. *See Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling[.]"). Plaintiff argues that this finding was in error because it failed to adequately address the fatiguing side effects of Plaintiff's medication. (Doc. No. 18 at 16-18.) In her opinion, the ALJ reasoned that, although Plaintiff reported "drowsiness and sleepiness from the use of medications, the evidence of record documented no significant, ongoing concerns from any medical source. This fact suggests that these side effects are not debilitating." AR 20. Plaintiff does not cite to any objective evidence of disabling side effects in the record and instead relies on his own self-reports, which were discounted by the ALJ as discussed further below. Having reviewed the record, the Court finds that the ALJ's interpretation of the evidence was reasonable and supported by substantial evidence.

Finally, the ALJ discounted Dr. Kirby's opinion because it was inconsistent with Plaintiff's

reported activities of daily living. An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly determined that the claimant's daily activities "did not suggest [the claimant] could return to his old job . . . , but . . . did suggest that [the claimant's] later claims about the severity of his limitations were exaggerated"); *Magallanes*, 881 F.2d at 754 (conflicts between treating physician's opinion and claimant's own testimony properly considered by ALJ in rejecting treating physician's opinion).

In support of her finding, the ALJ noted that Plaintiff is independent in his personal care and is able to help take care of four minor children, prepare simple meals, and drive. AR 20. During the hearing, Plaintiff testified that he required assistance with household chores, but a medical report dated June 5, 2016 stated that Plaintiff can perform household chores such as vacuuming, mopping, taking out trash, doing laundry, and washing dishes. AR 20. Plaintiff briefly argues that the ALJ's finding was "harmful[] and erroneous[]" for the same reasons the ALJ erred in discounting Plaintiff's subjective symptom testimony as inconsistent with his activities of daily living. (Doc. No. 18 at 17.) However, the Court finds it was reasonable for the ALJ to find Dr. Kirby's assessment that Plaintiff was limited to less than sedentary work was inconsistent with his ability to care for himself and others on a daily basis and to drive a car. See *Tommasetti*, 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Magallanes*, 881 F.2d at 755.

### B.  The ALJ properly evaluated Plaintiff's subjective complaints.

Plaintiff also asserts that the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (Doc. No. 18 at 17-24.)

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison*, 759 F.3d at 1014; *Batson*, 359 F.3d at 1196. First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony

1    regarding the severity of his symptoms only by offering specific, clear and convincing reasons for

2    doing so. *Id.* at 1015.

3          Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

4    expected to cause the alleged symptoms, but discounted his statements concerning the intensity,

5    persistence and limiting effects of those symptoms. AR 19. The ALJ did not find that Plaintiff was

6    malingering and was therefore required to provide specific, clear and convincing reasons for

7    discounting Plaintiff's testimony.

8          Plaintiff first argues that the ALJ committed harmful error because he failed to properly

9    discount Plaintiff's testimony regarding the side effects of his medication. (Doc. No. 18 at 21-22.)

10   According to Plaintiff, the objective evidence establishes that Plaintiff takes Norco and online medical

11   literature reveals that the side effects of Norco include dizziness and lightheadedness. (Doc. No. 18 at

12   22.) As an initial matter, the "online literature" Plaintiff cites is not part of the administrative record

13   and it appears that he is submitting this evidence to the Court for the first time on appeal. However,

14   Plaintiff has not shown that the "online literature" is material and there was good cause for the failure

15   to incorporate this evidence into the administrative record. *See* 42 U.S.C. § 405(g). Thus, the Court

16   does not consider the "online literature" on which Plaintiff relies.

17         Furthermore, the ALJ noted in her decision that "[a]lthough the claimant alleges drowsiness

18   and sleepiness from the use of medications, the evidence of record documented no significant, ongoing

19   concerns from any medical source" regarding medication side effects. AR 20. "Contradiction with the

20   medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle*, 533

21   F.3d at 1161 (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir. 1995)). Nonetheless, the ALJ

22   explained that she "considered these side effects and they are accommodated by the residual functional

23   capacity determined herein." AR 20. Plaintiff contends that this was error because the RFC did not

24   contain limitations on exposure to hazards or concentration, persistence, or pace. (Doc. No. 18 at 22.)

25   However, Plaintiff does not identify any evidence or other authority indicating that such functional

26   limitations were required.

27         "[T]he ALJ is responsible for translating and incorporating clinical findings into a

28   succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (citing

16

*Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008)). Plaintiff alleged drowsiness and

sleepiness, but the record does not conclusively establish what functional effect drowsiness and

sleepiness would have on Plaintiff's ability to work. The ALJ interpreted the overall medical evidence

and determined that, functionally, Plaintiff could "lift and carry ten pounds frequently and twenty

pounds occasionally, stand and walk for six hours in an eight-hour workday, sit without limitations,

frequently climb ramps and stairs, occasionally stoop, kneel, crouch, crawl, and limb ladders, ropes,

and scaffolds, and must be permitted to alternate between sitting and standing every thirty minutes."

AR 18. Drowsiness and sleepiness do not *per se* require limitations on exposure to hazards or

concentration, persistence, or pace. Thus, it was within the ALJ's province to determine, based on the

totality of the evidence, what functional limitations Plaintiff had based on the side effects of his

medications. *See Rounds*, 807 F.3d at 1006. Plaintiff has failed to show that the ALJ unreasonably

interpreted the evidence when doing so and has consequently failed to show harmful error. *See Ludwig*

*v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) ("Reversal on account of error is not automatic, but

requires a determination of prejudice.") (citation omitted).

Plaintiff also contends that the ALJ erred in discounting Plaintiff's testimony based on her own

lay observations of Plaintiff at the hearing. (Doc. No. 18 at 22-23.) This argument is without merit. In

her decision, the ALJ noted:

> "The claimant showed no persuasive evidence of debilitating pain or discomfort while
> testifying at the hearing. In addition, during a face-to-face interview with an employee
> of the Social Security Administration conducted on February 9, 2016, the claimant
> walked slowly but demonstrated no significant physical difficulties (Exhibit 1E). While
> the hearing and the interview were short-lived and cannot be considered a conclusive
> indicator of the claimant's overall level of physical problems on a day-to-day basis, the
> apparent lack of serious physical difficulties during the hearing and the interview is
> somewhat inconsistent with the alleged severity of his symptoms."

AR 20. While the ALJ's observations of a claimant's functioning may not form the sole basis for

discrediting a person's testimony, personal observations may be used in "the overall evaluation of the

credibility of the individual's statements." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Here, the

ALJ expressly acknowledged this limitation and provided other reasons for rejecting Plaintiff's

subjective symptom testimony, including inconsistency with the objective medical record,

1   improvement with medication, and inconsistency with Plaintiff's reported activities of daily living. *See*

2   *Carmickle,* 533 F.3d at 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient

3   basis for rejecting the claimant's subjective testimony.") (citation omitted); *Warre*, 439 F.3d at 1006

4   ("Impairments that can be controlled effectively with medication are not disabling[.]"); *Molina v.*

5   *Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages

6   in daily activities inconsistent with the alleged symptoms," and those activities may be "grounds for

7   discrediting the claimant's testimony to the extent that the contradict claims of a totally debilitating

8   impairment"). Thus, the ALJ did not err in considering her observations of Plaintiff at the hearing as

9   part of the overall evaluation of Plaintiff's credibility.

10          Finally, Plaintiff alleges that the ALJ erred in discounting Plaintiff's testimony based upon his

11   limited ability to perform some daily activities. (Doc. No. 18 at 23-24.) According to Plaintiff, his

12   limited abilities to drive his children to school "on 'good days' for 10 minutes at a time, only prior to

13   taking Narcotic [sic] medication . . . or to prepare a simple microwave meal" do not equate to an

14   ability to sustain work activity on a consistent basis. (*Id.* at 24.) The ALJ reasoned that Plaintiff's daily

15   activities "are not limited to the extent one would expect, given the complains of disabling symptoms

16   and limitations." AR 20. The ALJ cited to plaintiff's reports that he is independent in his personal care

17   in addition to his testimony that he helps take care of his four minor children, prepares simple meals,

18   and drives. AR 20. This description was based on Plaintiff's hearing testimony as well as treatment

19   notes dated March 22, 2018, stating Plaintiff is "[s]till staying home all day w[ith] the kids and they

20   love it. He is a house daddy for 4 boys." AR 20, 1461. The ALJ also noted that Plaintiff testified at the

21   hearing that he required assistance with household chores, but Dr. Van Kirk's report dated June 5,

22   2016, stated Plaintiff reported being able to perform household chores such as vacuuming, mopping,

23   taking out trash, doing laundry, and washing dishes. AR 20, 556.

24          An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v.*

25   *Bowen*, 885 F.2d 597, 603 (9th Cir.1989) (the nature of daily activities may be considered when

26   evaluating credibility). Moreover, in evaluating a claimant's credibility, an ALJ may consider

27   inconsistencies between the claimant's testimony and the claimant's conduct and whether the claimant

28   engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even

where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Molina*, 674 F.3d at 1113; *see also Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("ordinary techniques of credibility evaluation" may be considered, such as prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid."); *Alonzo v. Colvin*, 2015 U.S. Dist. LEXIS 122298, 2015 WL 5358151 at *17 (E.D. Cal. Sept. 11, 2015) (one inconsistent statement "comprised a clear and convincing reason to discount Plaintiff's credibility").

While disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations, where the level of activity is inconsistent with a claimant's claimed limitation, those activities have bearing on the claimant's credibility. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). As the Ninth Circuit explained in *Fair*, 885 F.2d at 604, "if [the plaintiff] remains able to perform ordinary household and personal tasks, then he has not carried his burden of proving that his pain prevents him from returning to [work]. While such reasoning may not hold up in all cases . . . it is sufficient here, as [the plaintiff] has not put forward any evidence that reconciles the inconsistency between his words and his actions." Such circumstances are evident in this case. The ALJ's decision recognizes that Plaintiff has some work limitations, however, she discredits Plaintiff's testimony that her limitations render him completely unable to work.

The ALJ is the trier of fact and he is permitted to reject testimony regarding subjective symptoms as long as he makes specific findings justifying that decision. *Fair,* 885 F.2d at 604; *see also Bunnell v. Sullivan,* 947 F.2d 341, 346 (9th Cir. 1991) ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence." ); *Hayatgheyb v. Callahan,* 120 F.3d 268 (9th Cir. 1997) (upholding an ALJ's finding that the plaintiff was not credible where he "made sufficient inquiries into [plaintiff's] daily routine and medical and work history, and made specific findings to justify her rejection of his pain testimony[.]" (citations omitted)). Where the ALJ makes a reasonable interpretation of the claimant's testimony, it is not the Court's role to second-guess it. *Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). The Court concludes that the ALJ's interpretation was reasonable, and he made the requisite specific findings to reject Plaintiff's

19

subjective symptom testimony.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Rafael Lopez.

IT IS SO ORDERED.

Dated:   __November 4, 2020__              _____/s/ *Barbara A. McAuliffe*_____
                                                          UNITED STATES MAGISTRATE JUDGE